O

# United States District Court
# Central District of California

| | |
|---|---|
| CYRUS RAPHAEL; individually, and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act,<br><br>     Plaintiff,<br><br>  v.<br><br>TESORO REFINING AND MARKETING CO. LLC; and DOES 1–100, inclusive,<br><br>     Defendants. | Case No. 2:15-cv-02862-ODW(Ex)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [12]** |

## I. INTRODUCTION

Plaintiff Cyrus Raphael ("Raphael") has brought suit against his former employer, Tesoro Refining and Marketing Co., LLC ("Tesoro"), on behalf of himself and other aggrieved employees of Tesoro for violations of several provisions of the California Labor Code ("CLC"). Raphael initially filed suit in Los Angeles County Superior Court, and Tesoro promptly removed the action to this Court. Tesoro argues § 301 of the Labor Management Relations Act ("LMRA") preempts Raphael's state law claims and creates federal question jurisdiction over those claims. For the reasons

discussed below, the Court **DENIES** Raphael's Motion to Remand.[1] (ECF No. 12.)

## II. FACTUAL BACKGROUND

Raphael was an employee of Tesoro working in the County of Los Angeles, California from approximately April 2007 until March 2014. (ECF No. 1, Ex. A Compl. ¶ 13.) During this period, Raphael claims that Tesoro engaged in "a uniform policy and systematic scheme of wage abuse" against him and the other aggrieved employees. (*Id.* ¶ 20.) Raphael further alleges that Tesoro violated various CLC provisions due to Tesoro's: (1) failure to pay for overtime hours worked; (2) failure to provide uninterrupted meal and rest periods; (3) failure to pay at least minimum wage for all hours worked; (4) failure to pay all wages owed upon discharge or resignation; (5) failure to pay within a period of time statutorily permissible; (6) failure to provide complete and accurate wage statements; (7) failure to keep complete and accurate payroll records; (8) failure to reimburse for necessary business-related expenses and costs; and (9) failure to properly compensate employees.[2] (*Id.* ¶¶ 32–40.)

Shortly after Raphael filed his complaint with the Los Angeles County Superior Court, Tesoro removed the suit to federal court pursuant to 28 U.S.C. § 1331. (ECF No. 1, Notice of Removal 1.) Tesoro claimed that federal question jurisdiction existed due to the necessary analysis of eight different collective bargaining agreements ("CBAs")[3], which, as discussed below, preempts any state law claim in the current suit. (*Id.* at 2–8.) Raphael now moves to remand. (ECF No. 12, Motion to Remand ["Remand"].) A timely opposition and reply were filed. (ECF Nos. 18, 21.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] Raphael has alleged violations of CLC §§ 201, 202, 203, 204, 226(a), 226.7, 510, 512(a), 1174(d), 1194, 1197, 1197.1, 1198, 2800, and 2802.

[3] Tesoro claims that one CBA, the USW Wilmington CBA, covers Raphael's place of work and type of employment and there are seven other CBAs in total that are in place throughout California that cover the "other aggrieved employees" that Raphael seeks to represent. (ECF Nos. 17, 16.) Tesoro's original Notice of Removal stated that there were only six CBAs in place, but that figure did not take into account two additional CBAs in effect at Tesoro's Northern California establishments. (ECF Nos. 1, 4.)

Raphael's Motion is now before the Court for consideration.

### III. LEGAL STANDARD

A federal court may exercise removal jurisdiction over a case only if jurisdiction existed over the suit as originally brought by the plaintiffs. 28 U.S.C. § 1441. The removing party bears the burden to establish that federal subject matter jurisdiction exists. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). The right to remove a case to federal court is entirely a creature of statute. *See Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. *See* 28 U.S.C. §§ 1441(a), (b); *see also* 28 U.S.C. §§ 1331, 1332(a). A case presents a "federal question" if a claim "aris[es] under the Constitution, laws, or treaties of the United States." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (quoting 28 U.S.C. § 1331).

Whether removal jurisdiction exists must be determined by reference to the "well-pleaded complaint." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The well-pleaded complaint rule makes plaintiff the "master of the claim." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, where the plaintiff can state claims under both federal and state law, he can prevent removal by ignoring the federal claim and alleging only state law claims. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996).

However, there is an exception to the "well-pleaded complaint" rule. Under the "artful pleading" doctrine, a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state law cause of action. If the claim arises under federal law, the federal court will re-characterize it and uphold removal. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 n. 2 (1981); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983). The "artful pleading"

doctrine applies to state claims that are completely preempted by federal law. *See Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law").

To support a finding of complete preemption, the preemptive force of the federal statute at issue must be "extraordinary." *See Metro. Life Ins. Co.*, 481 U.S. at 65. For this reason, the complete preemption doctrine is narrowly construed. *See Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993) ("The [complete preemption] doctrine does not have wide applicability; it is a narrow exception to the 'well-pleaded complaint rule'"). "[O]nly three areas have been deemed areas of complete preemption by the United States Supreme Court: (1) claims under the Labor Management Relations Act [LMRA § 301]; (2) claims under the Employment Retirement and Insurance Security Act (ERISA); and (3) certain Indian land grant rights." *Gatton v. T–Mobile USA, Inc.*, No. SACV 03–130 DOC, 2003 WL 21530185, *5 (C.D. Cal. Apr. 18, 2003); *see also Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 585 (6th Cir. 1990).

## IV.  DISCUSSION

### A.  LMRA § 301 Creates Federal Question Jurisdiction

Section 301(a) of the LMRA gives federal courts exclusive jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The question at the heart of the Court's analysis regarding preemption is whether the Court will be required to interpret the relevant CBAs. The line that must be drawn to separate state law claims from claims preempted by LMRA § 301 is far from clear; many wise men and women have ruled on this issue, yet a dispositive answer continues to elude the courts. This distinction, which divides *reference* to CBAs from *interpretation* of CBAs, is not one "that lends itself to analytical precision." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc), 534 U.S. 1078 (2002). However, even without precedent

providing precise guidance, the Court believes that analysis and interpretation of Tesoro's eight CBAs will be necessary to determine the proper outcome of Raphael's claims and is therefore preempted by LMRA § 301.

### *1. Legal Standard Governing LMRA § 301 Preemption*

"The preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983); *see also Caterpillar*, 482 U.S. at 394 ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement'" (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n. 3 (1987))). Section 301 requires resorting to federal law in order to ensure uniform interpretation of CBAs across the country, and thus to promote the peaceable, consistent resolution of labor management disputes nationwide. E.g., *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 n. 3 (1988).

To further the goal of uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended beyond suits that allege the violation of a collective bargaining agreement. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) (holding that a claim for breach of the duty of good faith and fair dealing was preempted by § 301 because "good faith" and "fair dealing" had to be assessed with reference to the contractual obligations of the parties). Thus, a state law claim will be preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require judicial interpretation of those terms. *Id.* at 210–11 ("The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation").

Despite the broad preemptive effect of § 301, a claim that seeks to vindicate

"nonnegotiable state-law rights . . . independent of any right established by contract" is not within its scope. *Allis–Chalmers Corp.*, 471 U.S. at 213; *see also Livadas v. Bradshaw*, 512 U.S. 107, 123–24 (1994) ("[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law. . . . [I]t is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . that decides whether a state cause of action may go forward" (citations omitted)). As a result, if a state law cannot be waived or modified by private contract, and if the rights it creates can be enforced without resorting to interpreting the particular terms, express or implied, of a labor contract, § 301 does not preempt the claim for violation of the law. *See Miller v. AT&T Network Sys.*, 850 F.2d 543, 546 (9th Cir. 1988). "If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer*, 255 F.3d at 691.

Nor can a defendant invoke preemption merely by alleging a "hypothetical connection between the claim and the terms of the CBA," or a "creative linkage" between the subject matter of the suit and the wording of the CBA. *Id.* at 691–92. To prevail, "the proffered interpretation argument must reach a reasonable level of credibility." *Id.* at 692. A preemption argument is not credible "simply because the court may have to consult the CBA to evaluate [a plaintiff's claim]; [similarly,] 'look[ing] to' the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption." *Id.* (quoting *Livadas*, 512 U.S. at 125). In *Cramer*, the Ninth Circuit clarified the scope of the LMRA's preemptive effect by holding "[a] state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." *Id.* at 693. *See also Humble v. Boeing Co.*, 305 F.3d 1004, 1007–08 (9th Cir. 2002) (recognizing that *Cramer* "revised [the] framework for analyzing § 301 preemption and synthesized the considerations involved").

The Ninth Circuit has articulated a two-part test to determine whether a cause of action is preempted by the LMRA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, the court must determine if the asserted cause of action involves a right conferred upon an employee by virtue of state law, independent of a CBA. *Id.* at 1060. If the right exists solely because of the CBA, then the claim is preempted, and analysis ends. *Id.* Second, if the right exists independently of the CBA, the court must then consider whether resolving the dispute is nevertheless "substantially dependent on [the] analysis of a collective-bargaining agreement." *Id.* If such dependence exists, then the claim is preempted by § 301; if not, then the claim is left to state courts to handle in accordance with state law. *Id.*

### 2. Application of LMRA § 301 Analysis to Raphael's Claims

Amidst Raphael's numerous allegations against Tesoro for violations of the CLC, two claims are particularly important in resolving the jurisdictional quandary before the Court. Raphael's claims regarding sections 510 and 512(a) of the CLC stand apart from the other allegations because they both are subject to exemption clauses that specifically exclude employees covered by valid CBAs from having a cause of action under those sections. Cal. Lab. Code §§ 510, 512(a), (e), 514. Those exemption clauses are found in sections 514 and 512(e), respectively, and contain several specifications that must be met for the exemption to apply. *Id.* §§ 512(e), 514.

Section 512(e) states that subsection 512(a) does not apply to "commercial drivers," and employees whose work includes "maintenance, improvement, and repair, and any other similar or related occupation or trade" when the employee is covered by a CBA meeting certain requirements. *Id.* § 512(f)–(g). The additional CBA requirements are:

> The valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application

>of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

*Id.* § 512(e)(2).

The requirements under section 514 are quite similar, though ultimately less restrictive. The only differences in section 514 are that there is no job classification requirement and the employee's CBA need not address meal periods or provide for final and binding arbitration of disputes. *Id.* § 514.

These exceptions affect the application of the *Burnside* test in two major ways. First, if the exemptions are applicable to Raphael and the other aggrieved employees there is no independently created right for the claims Raphael is pursuing under these sections. Indeed, the only rights at issue in that scenario would be those contained within the CBA, and "[i]f the right exists solely as a result of the CBA, then the claim is preempted, and . . . analysis ends." *Burnside*, 491 F.3d 1059. Second, if interpretation of the CBAs is necessary to determine if the exemptions apply, the process of doing so would necessarily satisfy the second prong of the *Burnside* test.

However, simply asserting that one, or both, of these exemptions apply as an affirmative defense to litigation cannot suffice as the sole basis for preemption and removal. *Cramer*, 255 F.3d at 690; *see also Caterpillar,* 482 U.S. at 399 (stating "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law.") Indeed, Raphael strongly emphasizes this particular line of precedent and claims that Tesoro's arguments are purely defenses that should be brought against his claims in state court. (Remand 7–8; Reply 1–2.)

To support his position, Raphael cites to a recent decision within this very district, *Vasserman v. Henry Mayo Newhall Memorial Hospital*, No. CV 14-06245 MMM PLAX, 2014 WL 6896033 (C.D. Cal. Dec. 5, 2014). (Remand 7–8.) In *Vasserman*, the plaintiff sought a remand for her case alleging that the defendant had

failed to pay overtime as required by CLC § 510 and failed to provide meal breaks.[4] *Vasserman*, 2014 WL 6896033 at *3. The defendants had removed to federal court on the basis of LMRA § 301 preemption due to the exemptions provided in CLC §§ 512(e) and 514. *Id.* at *14, 18. The court held that relying solely on those statutory exemptions as an affirmative defense could not justify removal when analysis of the CBAs at issue would not be required. *Id.* at *16; *see*, e.g., *Placencia v. Amcor Packaging Distribution, Inc.*, No. SACV 14-0379 AG JPRX, 2014 WL 2445957, at *2 (C.D. Cal. May 12, 2014) ("If Plaintiff's overtime claim under California law fails, that doesn't mean this Court has jurisdiction, it means [Defendant] wins.").

Tesoro argues that *Vasserman* should not determine the outcome of this case, spurring a battle of footnotes amongst the parties regarding its applicability on the facts before the Court. (Opp'n 8–9; Reply 9.) The key distinction Tesoro draws is that the defendant in *Vasserman* failed to show the court that the terms of the CBA required interpretation, and that failure was the sole reason that preemption did not apply. (Opp'n 8–9.) Indeed, the analysis in *Vasserman* is sown with conclusions stating that interpretation of the CBAs was not required because the terms and provisions were "straightforward and clear." *Vasserman*, 2014 WL 6096033 at *16.

However, the court in *Vasserman* offered its own interpretation of what separated its decision from a recent case with similar facts, *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093 (N.D. Cal. 2014). *Coria* held that § 301 preempted the plaintiff's claims under CLC § 510 and § 512(a) because deciding if the exemptions applied required interpreting the CBA. *Id.* at 1096–1100. In Judge Morrow's words, the difference in *Vasserman*, as compared to *Coria*, was "fundamentally, . . . the CBA's [provisions] are clear and will not require interpretation to determine if the § 514

---

[4] In *Vasserman* the plaintiff's meal period claims were based in CLC § 226.7 which states, "[a]n employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute . . . ." The applicable statue in this scenario would be CLC § 512(a), the same statute Raphael alleges Tesoro violated, though the court did not address the section 512(e) exemption due, the Court believes, to defendant's desire to use their CBA to assess plaintiff's "credibility, unclean hands, and [defendant's] opportunity to cure" rather than if section 512(e) applied. *Id.* at *20.

1 exemption applies." *Vasserman*, 2014 WL 6096033 at *17 n. 72.

2       That distinction sets the tone for the case before the Court now; the shortcomings of the defendant's arguments in *Vasserman* are not present in Tesoro's. Rather than merely relying on the existence of a valid CBA as their defense, Tesoro has affirmatively presented the Court with a plethora of provisions in need of interpretation throughout the eight separate CBAs covering Raphael and the aggrieved employees he seeks to represent. (Opp'n 8–18.) Tesoro describes the complexity involved in calculating the proper wage and premium wage rates under only a single CBA, highlighting essential terms that will need to be interpreted in order to determine if the statutory exemptions apply. (Opp'n 11–15.) The provisions viewed by the Court paint a picture far from "straightforward and clear," and that picture becomes increasingly muddied as the seven other CBAs at issue come into play.

      Surprisingly, were the complexity, and sheer magnitude, of the CBAs themselves insufficient to qualify as needing "interpretation," Raphael argues that the CBAs arbitration clause fails to meet the requirements set forth in CLC § 512(e). (Reply 6–8.) In Raphael's opinion, Tesoro's CBAs fail to provide for final and binding arbitration regarding violations of section 512's meal period provisions, and thus the section 512(e) exemption does not apply. (*Id.*) This argument's sole impact, however, is that it introduces a clear dispute between the parties as to the interpretation and application of the CBAs' arbitration provisions. E.g., *Buck v. Cemex Inc.*, No. 1:13-CV-00701-LJO, 2013 WL 4648579 at *7 (E.D. Cal. Aug. 29, 2013) (holding that plaintiff's claim under CLC § 512 was preempted by LMRA § 301 due to dispute over whether the CBA provided final and binding arbitration per CLC § 512(e)'s requirements). While the plaintiff in *Vasserman* succeeded in remanding her case, that success was because there was no dispute regarding the terms of the CBA, a crucial aspect that Raphael's case now lacks. *See Lividas v. Bradshaw*, 512 U.S. 107, 122–24 (1994) (stating that when the meaning of CBA terms are in dispute, state law "must yield to . . . federal common law").

Accordingly, to resolve Raphael's claims it will be necessary to interpret the relevant CBAs to determine whether the disputed provision satisfies the requirements of CLC § 512(e). Additional interpretation will be necessary with regard to Tesoro's assertion that the exemptions in CLC § 512(e) and § 514 apply to Raphael. Unlike the defendant in *Vasserman*, Tesoro has demonstrated to the Court that simply looking to the CBAs will be insufficient to determine whether the CLC provisions apply. Thus, the Court finds that Raphael's claims under CLC § 510 and § 512(a) are "substantially dependent on [the] analysis of a [CBA]" and are preempted by LMRA § 301. *Elec. Workers,* 481 U.S. at 859 n. 3.

## B. Supplemental Jurisdiction Over Any Remaining Claims

Tesoro argues that Raphael's other claims will also require substantial reliance upon the various CBAs that cover Raphael and the aggrieved employees. (Opp'n 10–18.) A detailed analysis of these other claims, however, is unnecessary, as the Court has found that § 301 preemption has already been established for the reasons stated above. To the extent that Raphael's remaining claims fall outside the scope of preemption, the Court finds that exercising supplemental jurisdiction over those claims is appropriate.

Raphael's remaining claims are "derive[d] from a common nucleus of operative fact" and of the nature which "a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 950, 955 (9th Cir. 2004). Furthermore, the Ninth Circuit has held that "a district court may exercise supplemental jurisdiction over claims that are brought in conjunction with [preempted claims]." *Brown v. Brotman Med. Ctr., Inc.*, 571 Fed. App'x 572, 576 (9th Cir. 2014).

The various CBAs will be analyzed thoroughly during the course of litigating the expressly preempted claims, the process of which will bestow the Court with detailed knowledge regarding the employment terms and provisions of the CBAs. This knowledge puts the Court in a position that would allow for adjudication of Raphael's other claims with relative ease, as they are all intertwined with the

provisions of the CBAs and are certainly related enough to the preempted claims to be tried together without difficulty. Accordingly, because several of Raphael's claims have been preempted, as discussed above, the Court extends supplemental jurisdiction to Raphael's remaining claims against Tesoro. E.g., *Buck*, 2013 WL 4648579 at \*6 ("the other issues raised by the Complaint would come within supplemental jurisdiction of this Court even if only tangentially involved with the CBA."); *Coria*, 2014 WL 3885873 at \*5; *see also Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1172–73 (9th Cir. 2002).

## V. CONCLUSION

For the reasons set forth above, the Court finds that federal question jurisdiction exists and **DENIES** Raphael's Motion to Remand. (ECF No. 12.)

**IT IS SO ORDERED.**

June 30, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**